UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LLOG EXPLORATION COMPANY, L.L.C.,                       CIVIL ACTION
et al.

versus                                                                        NO. 06-11248

CERTAIN UNDERWRITERS AT LLOYD'S                    SECTION: E/3
OF LONDON, et al.

**ORDER AND REASONS**

     Plaintiffs, LLOG EXPLORATION COMPANY, L.L.C., et al., (collectively "LLOG") filed a motion to remand this case to the 24th Judicial District Court for the Parish of Jefferson. Record document #17. Defendants, Certain Underwriters at Lloyd's of London, et al., ("the Insurers") oppose the motion. After considering the motion, memoranda, the record and the law, the motion to remand is GRANTED.

**BACKGROUND**

     This is an insurance coverage dispute. LLOG suffered very large property damage and business interruption losses at several production facilities in the Gulf of Mexico as a result of Hurricanes Katrina and Rita. LLOG carried "all risks" insurance policy covering the damaged production facilities. First Amended Petition, ¶XII. The "Property Insured" is defined as follows:

> Offshore exploration, production and/or
> development property of any description
> including, but not by way of limitation,
> platforms, oil or gas gathering systems,
> production facilities, and tankage, and
> materials, machinery and similar equipment
> appertaining thereto, owner and operated by
> the Assured or in which the Assured has an

> interest, or for which the Assured has assumed liability, in whole or in party [sic], also including equipment or contractors or others (if at risk os the Assured) for exploration, development and producing operations and including similar property on navigable inland waters.

First Amended Petition, ¶XIII. According to the Petition, LLOG timely notified the Insurers of its losses sustained as a result of both hurricanes, and submitted appropriate loss documentation and information. ¶¶XXIX, XXX. Alleging that the Insurers have refused or will refuse to indemnify LLOG in full for its covered losses under the insurance policy, LLOG filed suit against the Insurers in state court for declaratory relief and breach of contract. The Insurers removed, claiming federal question jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*

## ANALYSIS

A civil action filed in a state court may generally be removed to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). Statutes conferring removal jurisdiction are strictly construed in favor of remand. Shamrock Oil & Gas Corp. v. Sheets, 61 S.Ct. 868 (1941); Manguno v. Prudential Property and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). The burden is on the removing party to show that federal jurisdiction exists and that removal was proper. De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995).

Doubts or ambiguities regarding removal are to be construed against removal and in favor of remand.  Manguno, 276 F.3d at 723.

The parties do not dispute that the insured property is located on the Outer Continental Shelf, or  that Louisiana law will apply whether the case is litigated in state or federal court.  The only issue before the court is whether this insurance coverage dispute falls within the parameters of the statutory language of OCSLA granting original federal question jurisdiction.  That statute provides in pertinent part as follows:

> ... the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals ....

43 U.S.C. § 1349(B)(1).

LLOG argues that this insurance coverage dispute does not threaten or affect the efficient exploration, development or production of minerals on the outer Continental Shelf, therefore does not have a sufficient nexus with exploration, development or production as required by the statute for federal jurisdiction.[1]

---

[1] LLOG also argues that under the McCarran-Ferguson Act, insurance issues are solely a matter for state regulation unless Congress expressly provides otherwise, and the OCSLA does not expressly provide for jurisdiction over insurance disputes.  The court finds it unnecessary to address this argument.

They argue that the fact that the insured property is located on the outer Continental Shelf alone is not enough to meet the jurisdictional grant.  They further contend that the events at issue here - the Insurer's breaches of the insurance contract - occurred on dry land, in various offices in the United States and abroad, not on the outer Continental Shelf.

The Insurers argue that because the property insured is on the outer Continental Shelf, "this lawsuit strikes at the very heart of OCSLA's intended purpose - to let federal courts decide cases impacting federally owned minerals."  Response, p. 2.  They assert that LLOG claims business interruption coverage for "Loss of Production during the Recovery Period at the Insured'S Premises" and "Increased Cost of Working" that were caused by a covered event (see Amended Petition, ¶¶XV - XIX), therefore the insurance dispute involves the *production* of minerals on the outer Continental Shelf within the meaning of the statute's jurisdictional scope.  They also argue that Fifth Circuit case law supports their position that the situs of the alleged breach of contract is irrelevant.

Both parties cite to the same cases in support of their arguments, with one exception, which the court addresses first. The Insurers argue that the most notable case supporting their argument is Certain Underwriters at Lloyd's, London v. Oryx Energy Co., 203 F.3d 898, (5th Cir. 2000).  According to the

Insurers, in Oryx, the Fifth Circuit applied OCSLA when considering an insurance case involving an insurer's demand for reimbursement from an insured for payment of settlement funds that allegedly included punitive damages.  The implication is that the Fifth Circuit has held that insurance litigation in any way related to property on the outer Continental Shelf falls with in the scope of OCSLA's jurisdiction.  The Oryx case, and related cases[2], were litigated in the Eastern, Northern and Southern Districts of Texas, and twice in the Fifth Circuit.  All of the cases, including the underlying personal injury action, were filed in federal court by the plaintiff, and both Oryx and the Insurers were plaintiffs in separate cases, having sued each other in different districts.  Federal question jurisdiction under OCSLA was never challenged by any party, and was never directly addressed by any federal court.  It appears that all of the courts, including the Fifth Circuit, simply assumed jurisdiction existed under OCSLA, perhaps because the underlying

---

[2] See Certain Underwriters at Lloyd's, London v. Oryx Energy Co., 957 F.Supp. 930 (S.D.Tex. Feb 21, 1997); Certain Underwriters at Lloyd's, London v. Oryx Energy Co., 142 F.3d 255, (5th Cir. 1998).  In addition, Oryx sued Lloyd's for declaratory judgment in the Northern District of Texas (which suit was apparently either dismissed or transferred to the Souther District) and , and in the underlying tort suit, Mote, the injured plaintiff, sued Oryx in the Eastern District of Texas.  In the only case to directly address OCSLA, Oryx, 957 F.Supp. 930, at 935, the district court applied the test set out in Union Texas Petroleum Corp. v. PTL Engineering, 895 F.2d 1043, 1047 (5th Cir.), cert denied, 111 S.Ct. 136 (1990), to determine whether Texas law or general maritime law was applicable.  Regarding the first of the three factors, that the controversy must arise on a situs covered by OCSLA, the district court stated that it was uncontroverted that the underlying incident, Mr. Mote's injury, occurred on the outer Continental Shelf.  The court held that under OCSLA, Texas law applied.

tort occurred on the outer Continental Shelf.  The court does not find the Oryx case to be persuasive on the issue of OCSLA jurisdiction.[3]

Two Fifth Circuit cases have been cited repeatedly on the issue of jurisdiction under OCSLA in cases involving contracts.  The first is Laredo Offshore Constructors, Inc., v. Hunt Oil Co., 754 F.2d 1223 (5th Cir. 1985); the second is Amoco Prod. Co. v. Sea Robin Pipeline Co., 844 F.2d 1202 (5th Cir. 1988).  In Laredo, the Fifth Circuit *sua sponte* addressed the issue of its jurisdiction over a contract dispute involving the construction of a stationary offshore platform on the outer Continental Shelf.  Laredo, 754 F.2d at 1226.  It first examined the language of the statute, including the definition of the term "development".  Id.  That Court noted that "platform construction" was expressly included in the definition of "development", and found that the contract relates to the actual building of a platform therefore fell within "the plain meaning of the statute."  Id., at 1227.  The Court also examined at length the legislative history of OCSLA, and determined that the particular contract dispute before it, alleging improper partial construction of a fixed platform, fell within the range of legal controversies Congress expected and intended for federal jurisdiction.  Id., 1228-1229.

---

[3]*See* Brooklyn Union Exploration Company, Inc., v. Tejas Power Corp., 930 F.Supp. 289, 291 n.5 (S.D.Tex. 1996)(in the PLT Engineering case,the Fifth Circuit's "tacit acceptance of jurisdiction cannot be deemed a commentary on the jurisdictional scope of section 1349(b)(1)(A).")

The Insurers argue that the insurance coverage dispute at issue here directly affects *production* at several locations on the outer Continental Shelf, because LLOG has made a claim for continuing business interruption losses in its Amended Petition. The statute defines "production" as meaning:

> those activities which take place after the successful completion of any means for the removal of minerals, including such removal, field operations, transfer of minerals to shore, operation monitoring, maintenance, and work-over drilling.

43 U.S.C. § 1331(m). It does not include a property insurance coverage dispute regarding damages to production facilities that have already occurred and, according to LLOG's Reply Memorandum, have already been repaired. Moreover, the interruption and loss of production on the insured property was not a result of the any application of any provisions of the insurance contract, or of the coverage dispute at issue, but *vice versa*, the coverage dispute is the result of interruption and loss of production on the insured property caused by damages inflicted by Hurricanes Katrina and Rita.

The Sea Robin case involved a dispute in take-or-pay obligations in contracts for the sale/purchase of natural gas. Amoco sued Sea Robin in Louisiana state court, and Sea Robin removed the action to federal district court claiming federal question jurisdiction under OCSLA. The district court denied Amoco's motion to remand, and the Fifth Circuit addressed the

question on the district court's certification for interlocutory appeal. Sea Robin, 844 F.2d at 1203-1204. The Fifth Circuit, as it did in Laredo, examined the language of the statute and found that § 1349 did not permit "automatic application" of federal jurisdiction[4]. Id., at 1206. The Court identified the precise controversy at issue as arising from the "*cessation, suspension or reduction* of production." Id., at 1207 (emphasis in original). It then examined the contracts at issue as well as the nature of operating oil and gas wells, observing:

> Changes in the rate of oil or gas flow and/or interruptions in that flow not only cause a change in the actual "production" of the well involved for the duration of the change or the interruption, but may also decrease or affect the potential "production" that is or could ultimately be recovered from the well or the particular reservoir.

Id., at 1209-1210. The Fifth Circuit ultimately determined that "any dispute that alters the progress of production activities on the OCS threatens to impair the total recovery of the federally-owned minerals from the reservoir or reservoirs underlying the OCS" fell within the scope of federal jurisdiction pursuant to § 1349. Id., at 1211. Finding federal question jurisdiction pursuant to § 1349(b)(1)(A), it affirmed the district court's

---

[4]The Fifth Circuit observed that while the statute provided detailed definitions, at § 1333, for the terms "exploration", "development" and "production", it provided no definition of the term "operation" as used in § 1349, extending jurisdiction to "any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals...."

denial of remand.

The Insurers argue that in <u>Sea Robin</u>, as in this case, the alleged breach of contract did not occur on the outer Continental Shelf, but in offices on land in the United States.  They explain that the Fifth Circuit found federal jurisdiction in that case based on the subject of the contract and its relationship to production activities on the OCS.  The Insureds have not identified for the court any terms or conditions in the insurance contract at issue that directly affect the rate or manner of production of oil and/or gas on the covered facilities, as the <u>Sea Robin</u> contract did.  It is simply a property insurance contract to protect the insured from incurring losses as a result of damages to the facilities and loss of production capacity.

Both parties cite three district court cases, LLOG in support of its motion, and the Insurers to distinguish those cases from this one.  The first is <u>Brooklyn Union Exploration Co., Inc. v. Tejas Power Corp.</u>, 930 F.Supp. 289 (S.D.Tex. 1996)[5].  This case was filed by the plaintiff in federal court asserting jurisdiction pursuant to § 1349, and defendant moved to dismiss for lack of federal question jurisdiction.  The dispute concerned claims for breach of contract concerning the purchase of natural gas produced on the OCS.  <u>Id.</u>, at 289. The issue involved a

---

[5]This case was decided by Judge Kent in the Souther District of Texas, the same district judge who presided over <u>Certain Underwriters at Lloyd's, London v. Oryx Energy Co.</u>, 957 F.Supp. 930 (S.D.Tex. Feb 21, 1997), without addressing the jurisdictional issue.

provision calling for the recalculation of the price under certain circumstances.  Id.  The gas had already been produced and sold at a previously specified price.  After a discussion of Laredo and Sea Robin, the district court concluded that federal jurisdiction did not exist because the contractual provisions at issue did not govern the development or production of the gas (Laredo), and "will not alter the flow of production or otherwise affect the efficient exploitation of natural resources in the OCS" (Sea Robin).  Id., at 291-292.

In NCX Co., LLC v. Samedan Oil Corp., 2004 WL 203079 (E.D.La. 2004), NCX filed suit in state court for payment of processing fees it claimed were due under a contract with the defendant.  The defendant removed, alleging jurisdiction under § 1349(b)(1)(A).  Id., at *1.  After an evaluation of Laredo, Sea Robin, and Brooklyn Union, the district court remanded the case because the litigation involved "contractual provisions regarding the payment/price of services which have been already rendered, not provisions governing production or development."  Id., at *3.

Finally, Gulf Island, L.L.C. v. J. Ray McDermott, Inc., 2005 WL 180947 (E.D.La. 2005) was also before the district court on plaintiff's motion to remand.  The plaintiff had contracted with the defendant to construct topsides for a floating oil and gas production facility located on the OCS.  Id., at *1.  Again, following Laredo and Sea Robin, the district court observed that

"the fact that the topsides was used on the OCS is irrelevant to the breach of contract cause of action asserted on the face of the complaint."  Id., at *3.  The district court remanded the case upon finding breach of contract dispute at issue "will neither affect work on the OCS nor threaten recovery of resources from the OCS."  Id.

The same is true in the case at bar.  The insurance coverage dispute does not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned minerals from the OCS.  This case does not fall within the jurisdictional scope of § 1349(b)(1)(A).

Accordingly,

**IT IS ORDERED** that the motion to remand is **GRANTED** for lack of subject matter jurisdiction, and the captioned matter is hereby **REMANDED** to the 24th Judicial District Court for the Parish of Jefferson.

New Orleans, Louisiana, March 15, 2007.

_____
**MARCEL LIVAUDAIS, JR.**
Senior United States District Judge